IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICARDO BOJORQUEZ and                    Case No. 6:12-cv-02077-AA
STEPHANIE BOJORQUEZ,                          OPINION AND ORDER

        Plaintiffs,

    v.

WELLS FARGO BANK, NA;
FIRST AMERICAN TITLE
COMPANY OF OREGON; MATT
KOON; JEFF HAWS; CATHY
HAWS,

        Defendants.

---

Keith D. Karnes
Karnes Law Offices, PC
1860 Hawthorne Avenue, Suite 10
Salem, Oregon 97301
    Attorney for plaintiffs

Pilar C. French
Anthony M. Stark
Lane Powell, PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204
    Attorneys for defendant Wells Fargo Bank, NA

Bruce A. Rubin
Jeanne K. Sinnott
Miller Nash LLP
3400 US Bancorp Tower
111 SW Fifth Avenue
Portland, Oregon 97204
    Attorneys for defendant First American Title Company of Oregon

Michael J. Martinis
Martinis & Hill
PO Box 3938
110 Madrona Avenue, SE
Salem, Oregon 97302
    Attorney for defendants Matt Koon, Jeff Haws, and Cathy Haws

AIKEN, Chief Judge:

Defendants Wells Fargo Bank, NA ("WFB") and First American Title Company of Oregon ("American") separately move to dismiss plaintiffs Ricardo and Stephanie Bojorquez's first amended complaint ("FAC"). For the reasons discussed below, WFB's and Americans's motions are granted.

BACKGROUND

Ricardo Bojorquez, a Hispanic American, and his wife Stephanie Bojorquez, a member of the military, entered into an agreement with Jeff and Cathy Haws to purchase a residential property in Keizer, Oregon ("Property"), and subsequently moved therein. Plaintiffs needed financing to complete their acquisition of the Property; WFB, via loan officer Matt Koon, pre-approved Mr. Bojorquez for a loan.[1]

On July 30, 2012, plaintiffs deposited $2,000 with American, an escrow company, for the purchase of the Property, after which American issued a receipt indicating that the funds were "for closing." FAC ¶¶ 11-12. On July 31, 2012, American wired $700 to non-party U.S. Bank and $1,300 to non-party HomeStreet Bank, for the benefit of Ms. Haws and "at the instruction of Wells Fargo, Koon, Jeff Haws, and Cathy Haws." Id. at ¶¶ 13, 15. On August 15, 2012, plaintiffs deposited an additional $5,000 with American and again received a receipt reflecting that the funds were "for closing." Id. at ¶¶ 17-18. On August 16, 2012, American wired

---

[1] Because plaintiffs do not include dates in regard to the aforementioned events, it is unclear in what chronological order they occurred - i.e. whether the pre-approval was granted prior to, concurrent with, or after the execution of the agreement to purchase the Property. See FAC ¶¶ 4, 8-10, 22.

Page 2 - OPINION AND ORDER

$5,000 to non-parties Todd and Tory Bolatis "at the instruction of Wells Fargo, Koon, Jeff Haws and Cathy Haws," and for the Haws' benefit. Id. at ¶ 20. Plaintiffs were neither aware of these wire transfers nor did they consent to them. Id. at ¶¶ 14, 16, 21.

Thereafter, Mr. Koon informed plaintiffs that they were not approved for a loan. Because plaintiffs continued to live at the Property, the Haws "attempted to coerce Plaintiffs into entering into a lease option to purchase the Property with unfavorable terms." Id. at ¶ 23. Plaintiffs rejected this offer. As a result, on September 28, 2012, the Haws e-mailed plaintiffs a notice demanding that they vacate the Property.

On November 15, 2012, plaintiffs filed a complaint in this Court alleging: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of Oregon's Unfair Trade Practices Act ("UTPA"); (3) conversion; and (4) fraud. On June 24, 2013, WFB filed a motion to dismiss, which detailed several pleading deficiencies in plaintiffs' complaint. On August 14, 2013, with leave from the Court, plaintiffs filed their FAC, asserting their previous claims, along with new claims under the Equal Credit Opportunity Act ("ECOA") and the Fair Housing Act ("FHA").[2] On August 28, 2013, WFB filed a renewed motion to dismiss with prejudice. On September 11, 2013, American moved to

---

[2] The factual allegations contained plaintiff's FAC are identical to those asserted in the original complaint, but with the following additions: (1) Mr. Bojorquez is a Hispanic American; (2) Ms. Bojorquez "is a member of the military entitled to a . . . VA loan"; (3) WFB "steered plaintiffs away from a VA loan" and towards a less favorable loan; and (4) WFB "refused to fund the loan for which it had previously approved the plaintiffs . . . due to Mr. Bojorquez's Hispanic heritage." FAC ¶¶ 23-27.

dismiss the FAC with prejudice.[3]

## STANDARD OF REVIEW

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true.  Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).  Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true."  Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).  Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

Moreover, where fraud is alleged, heightened pleading standards apply.  See Fed. R. Civ. P. 9(b).  The plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) (citation and internal quotations omitted).  Likewise, the plaintiff is required to "set

---

[3] While plaintiffs do not specifically identify which claims are brought against which defendants, American's motion does not address plaintiffs' allegations concerning the ECOA and the FHA because, as discussed in greater detail below, these claims inhere to debtors, as opposed to escrow companies.

forth what is false or misleading about a statement, and why it is false." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotations omitted). Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-5 (9th Cir. 2007) (citation and internal quotations omitted).

## DISCUSSION

Defendants assert that, because plaintiffs' claims fail at the pleadings level and they have previously been granted leave to amend with "the benefit of full briefing on Wells Fargo's original motion," dismissal with prejudice is proper. <u>See</u> WFB's Mem. in Supp. of Renewed Mot. Dismiss 3; <u>see also</u> American's Mem. in Supp. of Mot. Dismiss 2 ("[d]ismissal should be with prejudice [because plaintiffs] failed to meaningfully confer before filing their First Amended Complaint . . . and as defendant Wells Fargo Bank, N.A., points out in its motion to dismiss, they have already had a second bite of the apple with the benefit of briefing on its previous motion but they have failed to cure their pleading defects"). Specifically, defendants argue that the FAC is conclusory and devoid of factual support, such that plaintiffs are unable to establish the requisite elements of their claims. Furthermore, defendants request that, once their federal claims are dismissed, this Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

I.    Preliminary Matter

Plaintiffs' response seeks to introduce several allegedly recently discovered "new" facts as the basis of their claims. See Pls.' Resp. to Mots. Dismiss 1-2 ("[p]laintiffs have had an arbitration hearing with Jeff and Cathy Haws relating to possession of the property [during which] it became clear that the plaintiffs need to file an amended complaint to conform to the evidence provided at the arbitration"). Based on these allegations, none of which appear in the FAC, in conjunction with their existing factual assertions, plaintiffs contend that dismissal is inappropriate. In the alternative, plaintiffs request leave to file a second amended complaint. Id. at 8 ("[i]f the Court requires the plaintiffs to do so, they will file an amended complaint with the additional facts contained in this motion").

As such, plaintiffs include and rely on the following facts in opposing defendants' motions:

(1) "Stephanie Bojorquez was given $6,000 from her father which was to be applied toward the down payment of the home";

(2) "Ricardo Bojorquez was originally the only person that was originally preapproved to purchase the home";

(3) "Ms. Bojorquez was not notified that FATCO was instructed by Wells Fargo to transfer the money held in escrow by FATCO to the Haws";

(4) "Mr. Bojorquez was told by Wells Fargo's employee, Matt Koon (Koon), that the money was going to be transferred to and for the benefit of the Haws prior to the transfer from FATCO to the Haws";

(5) "[p]laintiffs never gave written instructions to FATCO to transfer the money they deposited";

(6) "[a]s a part of the agreement between Mr. Bojorquez and Wells Fargo, on August 1, 2012 Koon guaranteed that Wells Fargo would fund the loan for which Mr. and Ms. Bojorquez had applied";

Page 6 - OPINION AND ORDER

(7) "[i]n reliance upon this guarantee, Mr. Bojorquez orally consented to the transfer of the $7,000 that was held at FATCO for the benefit of the Haws"; and

(8) "at the meeting between Mr. Bojorquez and Koon, Mr. Koon stated in a letter to the Haws that, 'As we spoke on the phone today I found out that we had an issue that I had to add Stephanie Bojorquez to the loan and transaction. She was left off in the beginning from the advice of our past loan officer who is no longer with our company. I don't understand why completely. The reason was not valid and it turns out she qualifies for our loan.'"

Id. at 2.

Initially, as defendants note, "these new facts are each things that plaintiffs would have known at the time of their original complaint, as they are things that were allegedly done by or said to plaintiffs[,] [such that there] is no excuse for plaintiffs' failure to include these facts in their pleadings, especially since they have already had one opportunity to amend." WFB's Reply to Renewed Mot. Dismiss 2, 4; see also American's Reply to Mot. Dismiss 2 n.1 ("plaintiffs say that they must amend their complaint to 'conform with the evidence' even though the 'evidence' they must conform to (their own testimony based on their own recollection) is not something that was unknown to them at the time they filed their complaint or the FAC"). Further, plaintiffs fail to provide any argument indicating how these facts are relevant and/or alter the nature of the existing allegations. See Pls.' Resp. to Mots. Dismiss 2, 4-7. Regardless, the majority of these allegations do not lend support to plaintiffs' claims. For instance, the fact that Ms. Bojorquez obtained $6,000 from her father for a down payment or was not notified that American transferred the money held in escrow, or that Mr. Bojorquez was originally the only person pre-approved for a loan, is immaterial.

Moreover, several of these allegations either contradict or detract from plaintiffs' FAC. Plaintiffs' claims are contingent, in part, on the fact that they did not consent to the transfer of escrow funds to the Haws; yet plaintiffs now maintain that, although they did not authorize American, in writing, to take any specific action, Mr. Koon notified Mr. Bojorquez that the escrow funds were going to be transmitted to and for the benefit of the Haws, and Mr. Bojorquez orally consented to this transaction. In other words, contrary to the allegations in the FAC, Mr. Bojorquez not only knew about American's escrow transfers, but also expressly approved them.

In any event, "'new' allegations contained in the [plaintiff's] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes." Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Rather, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Id. (citation omitted). Thus, in evaluating defendants' motions, this Court disregards the allegations first articulated in plaintiffs' response. Additionally, to the extent that plaintiffs seek leave to amend, their request is denied. See LR 7-1(b) ("[m]otions may not be combined with any response, reply, or other pleading").

## II. Racketeer Influenced and Corrupt Organizations Act Claim

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(C); see also 18 U.S.C. § 1961(1)(B) ("racketeering activity" includes any act "indictable" under certain enumerated federal criminal statutes, such as 18 U.S.C. § 1343, which makes wire fraud a crime).  To state a RICO claim, "a plaintiff must plead facts establishing: (1) that the defendant; (2) through the commission of predicate criminal acts which constitute a pattern of racketeering activity; (3) directly or indirectly invests in, or maintains an interest in, or participates in; (4) an enterprise." See Hogan v. NW Trust Servs., Inc., 2010 WL 1872945, *10 (D.Or. May 7, 2010), aff'd, 441 Fed.Appx. 490 (9th Cir. 2011) (citation omitted).  A pattern of racketeering "must be based on at least two acts of racketeering, must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  Cooper Indus., Inc. v. Lagrand Tire Chains, 205 F.Supp.2d 1157, 1165 (D.Or. 2002) (citations omitted).

In addition, a RICO claim based on wire fraud must include allegations concerning: (1) the formation of a scheme or artifice to defraud; (2) use of the United States mail or wires, or causing such a use, in furtherance of the scheme; and (3) a specific intent to deceive or defraud. See Schreiber, 806 F.2d at 1400 (citations omitted).  RICO claims that include allegations of fraudulent activities as predicate acts of racketeering must be pled with particularity under Fed. R. Civ. P. 9(b).  See Odom v. Microsoft Corp., 486 F.3d 541, 553-54 (9th Cir.), cert. denied, 552 U.S. 985 (2007).

Here, the FAC neither pleads what was specifically communicated by WFB to plaintiffs, nor does it indicate when or by

Page 9 - OPINION AND ORDER

what means the alleged misrepresentation took place.  See <u>Edwards</u>
<u>v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004) (RICO
claim based on a false representation must "state the time, place,
and specific content of the false representations as well as the
identities of the parties to the misrepresentation") (citation and
internal quotations omitted).  Plaintiffs also do not identify
whether the alleged misrepresentation occurred before or after
their escrow deposits, or what was false about WFB's alleged
statement that they were pre-approved for a loan.  See FAC ¶ 34;
<u>see also</u> WFB's Mem. in Supp. of Renewed Mot. Dismiss 7-8 ("[i]f it
was false that plaintiffs were pre-approved for the loan, then it
cannot be true that plaintiffs qualified for the loan . . .
[regardless] even if plaintiffs were pre-qualified [it] does not
imply that plaintiffs were actually qualified, since pre-approval
is just that - a preliminary determination that the applicant may
qualify, subject to certain conditions").

Further, plaintiffs do not allege that defendants engaged in
"a pattern of racketeering activity." <u>Hogan</u>, 2010 WL 1872945 at
*10; 18 U.S.C. § 1962.  Rather, the FAC refers to a single event:
defendants engaging in allegedly wrongful conduct pursuant to
plaintiffs' attempt to acquire the Property. See FAC ¶¶ 33-39.
Similarly, plaintiffs do not contend that there is any continuing
threat of criminal activity; the FAC does not allege that
plaintiffs made any further deposits with WFB or American that
could be disbursed, or that defendants engage in these allegedly
wrongful practices as "a regular way of conducting [their] ongoing
legitimate business[es]." <u>H.J. Inc. v. N.W. Bell Tel. Co.</u>, 492
U.S. 229, 242 (1989).

Page 10- OPINION AND ORDER

Notably, plaintiffs wholly fail to address defendants' arguments concerning Fed. R. Civ. P. 9(b)'s heightened pleading standards or the "pattern of racketeering activity" requirement. See Pls.' Resp. to Mots. Dismiss 4-5; see also Samper v. Providence St. Vincent Med. Ctr., 2010 WL 3326723, *16 (D.Or. Aug. 23, 2010), aff'd, 675 F.3d 1233 (9th Cir. 2012) ("[plaintiff] does not address this argument in her opposition and, thus, she appears to concede that she is unable to state a claim"); Day v. D.C. Dep't of Consumer & Regulatory Affairs, 191 F.Supp.2d 154, 159 (D.D.C. 2002) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded"). Instead, plaintiffs contend that, because Or. Rev. Stat. § 696.581(3) specifies that an escrow agent may not disburse funds without first obtaining written instructions from a principal, defendants violated RICO. Plaintiffs' assertion is unavailing for two reasons. First, the statute only pertains to American; thus, even accepting plaintiffs' argument, they still failed to state a claim against WFB. Second, and more importantly, "[t]hat a statute requires written instructions does not mean that a party makes a misrepresentation when proceeding without written instructions." American's Reply to Mot. Dismiss 3-4. This is especially true where, as here, the statute at issue does not create a private right of action. See Or. Rev. Stat. § 696.505 et seq.; Gardner v. First Escrow Corp., 72 Or.App. 715, 726, 696 P.2d 1172, rev. denied, 299 Or. 314, 702 P.2d 1111 (1985) (Oregon escrow statutes do not create a private right of action); see also Serles v. Beneficial Or., Inc., 91 Or.App. 697, 703, 756 P.2d 1266 (1988) (declining to recognize a private right of action under an

analogous statutory scheme).    For these reasons, defendants'
motions are granted and plaintiffs' RICO claim is dismissed.

III. Equal Credit Opportunity Act Claim

Pursuant to the ECOA, it is wrongful for "any creditor to
discriminate against any applicant, with respect to any aspect of
a credit transaction . . . on the basis of race, color, religion,
national origin, sex or marital status, or age," or because "all or
part of the applicant's income derives from any public assistance
program." 15 U.S.C. § 1691(a). To allege a claim under the ECOA,
the plaintiff is required to allege that he or she: "(1) is a
member of a protected class; (2) applied for credit; (3) was
qualified for credit; and (4) was denied credit, despite being
qualified." Blair v. Bank of Am., N.A., 2012 WL 860411, *13 (D.Or.
Mar. 13, 2012) (citation omitted).

The Court finds that plaintiffs' ECOA claim fails at the
pleadings level. Critically, beyond merely concluding that they
were "refus[ed] the loan for which [they were] qualified,"
plaintiffs do not to allege any facts demonstrating that they were,
in fact, eligible for credit and nonetheless denied. See FAC ¶¶
51-53; see also Ashcroft, 556 U.S. at 678 ("a formulaic recitation
of the elements of a cause of action will not do") (citation and
internal quotations omitted). Mr. Bojorquez's status as pre-
approved for a Property loan does not remedy this defect; as
denoted above, being pre-approved is not inconsistent with
ultimately not being qualified to receive credit. Additionally, to
the extent that plaintiffs' ECOA claim is premised on Ms.
Bojorquez's alleged "entitle[ment] to a . . . VA loan," her status
as a member of the military does not, by itself, render her

Page 12- OPINION AND ORDER

qualified and, further, there is no allegation that she applied for a VA loan and was denied. See FAC ¶¶ 24-25, 27.

Although WFB specifically identifies these shortcomings in its motion, plaintiffs fail to meaningfully respond. Compare WFB's Mem. in Supp. of Renewed Mot. Dismiss 6 ("nothing in the FAC indicates that plaintiffs were qualified for any loan, nor that they were denied a loan for which they were qualified"), with Pls.' Resp. to Mots. Dismiss 7 (arguing only that WFB has a history of "giving less favorable loan terms to Hispanic and African American borrowers," such that "[t]he facts in the complaint clearly state that plaintiffs were discriminated in their housing loan due to Ms. Bojorquez's national origin"); see also Samper, 2010 WL 3326723 at *16; Day, 191 F.Supp.2d at 159. Therefore, WFB's motion is granted in this regard.

IV. Fair Housing Act Claim

Under the FHA, it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605. To state a claim under the FHA, "the plaintiffs must plead that (1) they were a member of a protected class; (2) they attempted to engage in a 'real estate-related transaction' with [the defendants], and met all relevant qualifications for doing so; (3) [the defendants] refused to transact business with the plaintiffs despite their qualifications; and (4) the defendants continued to engage in that type of transaction with other parties with similar

Page 13- OPINION AND ORDER

qualifications." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 346 (6th Cir. 1994) (citing <u>Sec'y, U.S. Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell</u>, 908 F.2d 864, 870 (11th Cir. 1990)).

Similar to their ECOA claim, plaintiffs' FHA claim fails at the pleadings level; plaintiffs have not alleged any facts in support of their legal conclusion that they were denied a loan for which they were qualified. <u>See</u> FAC ¶¶ 54-56. Likewise, plaintiffs fail to respond to WFB's arguments regarding this claim. <u>See</u> Pls.' Resp to Mots. Dismiss 7; <u>see also Samper</u>, 2010 WL 3326723 at *16; <u>Day</u>, 191 F.Supp.2d at 159. Accordingly, WFB's motion is granted and plaintiffs' FHA claim is dismissed.

V.    <u>State Law Claims</u>

Dismissal of federal claims does not automatically deprive a district court of subject matter jurisdiction over supplemental state claims. <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 129 S.Ct. 1862, 1866 (2009). Rather, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction" over pendent state law claims. 28 U.S.C. § 1367(c)(3); <u>see also Lacey v. Maricopa Cnty.</u>, 649 F.3d 1118, 1137 (9th Cir. 2011).

Ordinarily, this Court would decline to exercise supplemental jurisdiction over plaintiffs' UTPA, conversion, and fraud claims. Nevertheless, because, as discussed below, plaintiffs' FAC is being dismissed without prejudice, the Court will retain jurisdiction over these claims, at least at this stage in the proceedings, in order to briefly address their merits. <u>See Ovitsky v. Oregon</u>, 2013 WL 4505832, *4 (D.Or. Aug. 20, 2013) (retaining jurisdiction of

pendent state law claims where they were being dismissed without
prejudice and it was likely that the pro se plaintiff would seek
amendment) (citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343,
351 (1988)).

A.    <u>Unfair Trade Practices Act Claim</u>

The UTPA extends a private cause of action to "any person who
suffers any ascertainable loss of money or property" as a result of
an unlawful trade practice.  Or. Rev. Stat. § 646.638(1).  The
statute contains several subsections delineating distinct unfair
trade practices.[4]  <u>See</u> Or. Rev. Stat. §§ 646.607, 646.608.  To
state a claim under the UTPA, a plaintiff is required to plead: (1)
that the defendant violated one or more of these subsections; "(2)
causation ('as a result of'); and (3) damage ('ascertainable

_____

[4] In relevant part, a "person engages in an unlawful
practice when in the course of the persons business, vocation or
occupation the person . . . (b) Causes likelihood of confusion or
of misunderstanding as to the source, sponsorship, approval, or
certification of real estate, goods or services . . . (e)
Represents that real estate, goods or services have sponsorship,
approval, characteristics, ingredients, uses, benefits,
quantities or qualities that they do not have or that a person
has a sponsorship, approval, status, qualification, affiliation,
or connection that the person does not have . . . (g) Represents
that real estate, goods or services are of a particular standard,
quality, or grade, or that real estate or goods are of a
particular style or model, if they are of another . . . (j) Makes
false or misleading representations of fact concerning the
reasons for, existence of, or amounts of price reductions[;] (k)
Makes false or misleading representations concerning credit
availability or the nature of the transaction or obligation
incurred . . . (m) Performs service on or dismantles any goods or
real estate when not authorized by the owner or apparent owner
thereof . . . (q) Promises to deliver real estate, goods or
services within a certain period of time with intent not to
deliver them as promised . . . (s) Makes false or misleading
representations of fact concerning the offering price of, or the
persons cost for real estate, goods or services[;] (t) Concurrent
with tender or delivery of any real estate, goods or services
fails to disclose any known material defect or material
nonconformity[;] (u) Engages in any other unfair or deceptive
conduct in trade or commerce."  Or. Rev. Stat. § 646.608(1).

Page 15- OPINION AND ORDER

loss')." <u>Moore v. Wells Fargo Bank, NA</u>, 2013 WL 3965313, *5 (D.Or. Aug. 1, 2013) (quoting <u>Feitler v. Animation Celection, Inc.</u>, 170 Or.App. 702, 708, 13 P.3d 1044 (2000)).

Aside from concluding that WFB's "actions constitute violations of . . . ORS 646.608[(1)](b), (e), (g), (j), (k), (q), (s), (t), and (u)," and American's "actions constitute violations of . . . ORS 646.608[(1)](k), (m), (q), (s), (t), and (u)," plaintiffs do not provide any further explanation or supporting factual allegations. FAC ¶¶ 40-42. As a result, defendants' motions are granted as to plaintiffs' UTPA claim.[5]

In addition, "[d]uring conferral, counsel for plaintiffs conceded that ORS 646.608(1)(m) was not a valid claim against First American and was included by mistake." American's Mem. in Supp. of Mot. Dismiss 8 n.2. Moreover, subsection (1)(u) is inapplicable: a claim "may not be brought under [Or. Rev. Stat. § 646.608(1)(u)] unless the Attorney General has first established a rule in accordance with the provisions of ORS chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce," and

---

[5] Plaintiffs again attempt to cure defects in the FAC via their response. <u>See</u> <u>Schneider</u>, 151 F.3d at 1197 n.1. Specifically, plaintiffs argue that WFB violated the UTPA by "repeatedly ma[king] false statements [that] plaintiffs were [pre-]approved for a loan," whereas American violated the UTPA by making "false statements [that] were more subtle[;] [i]mplied in any transaction is that the one party will conduct itself within the bounds of the law." Pls.' Resp. to Mots. Dismiss 5. As discussed above, WFB's refusal to fund plaintiffs' acquisition of the Property is not contravened by its determination that they were pre-approved for a loan, such that, beyond so concluding, plaintiffs have not provided any basis for this Court to determine that WFB violated the UTPA. Further, contrary to plaintiffs' assertion, the fact that Or. Rev. Stat. § 696.581(3) requires an escrow agent to obtain written authorization from a principal prior to disbursing funds does not, alone, establish a claim under the UTPA.

plaintiffs do not mention or discuss any such rule in their FAC. Or. Rev. Stat. § 646.608(4); FAC ¶¶ 40-43; see also Moore, 2013 WL 3965313 at *5.  Indeed, plaintiffs do not reference Or. Rev. Stat. § 646.608(1)(m) or (u) in their response.  See Pls.' Resp. to Mots. Dismiss 5 (addressing only Or. Rev. Stat. § 646.608(1)(e), (k), (s), and (t)).  For these additional reasons, plaintiffs' UTPA claim is dismissed.

     B.   Conversion Claim

     "Conversion is 'an intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" Lannaghan v. First Horizon Home Loans, 2011 WL 3273161, *9 (D.Or. July 27, 2011) (quoting Morrow v. First Interstate Bank, N.A., 118 Or.App. 164, 171, 847 P.2d 411 (1993)).  When a chattel is lawfully taken, however, "there is no conversion."  Id. (citing Outdoor Media Dimensions Inc. v. Oregon, 150 Or.App. 106, 112, 945 P.2d 614, 618 (1997)).  Similarly, "[i]f the original possession was rightful, no conversion could have been based upon the defendants' continued possession until a demand was made by the plaintiff and refused." Cross v. Campbell, 173 Or. 477, 490, 146 P.2d 83 (1944).  Thus, in this context, "[t]o maintain a plausible claim for conversion[,] Plaintiff must plead he had actual possession or the right to possession of the [chattel] and Defendants intentionally exercised control" after the plaintiff sought to recoup the chattel.  Blue Sky Avgroup, LLC v. Epic Air LLC, 2012 WL 5985147, *6 (D.Or. Nov. 29, 2012) (citing Or. Bank v. Fox, 73 Or.App. 612, 615, 699 P.2d 1147 (1985)); see also Rice v. Rabb, 251 Or.App. 603, 608 n.2, 284

P.3d 1178 (2012), rev. allowed, 353 Or. 280, 298 P.3d 30 (2013) (citing Cross, 173 Or. at 490).

Here, at the time of the alleged conversion, plaintiffs neither assert that they had actual possession or a right to control the escrow funds, nor do they allege any facts demonstrating that WFB had possession or control over such funds. See FAC ¶¶ 44-46. While American is alleged to have disbursed plaintiffs' $7000 deposit without their consent, there is no indication that plaintiffs requested that American or WFB refund their escrow deposit and/or were refused.[6] Id.; see also Cross, 173 Or. at 490. Due to these deficiencies, plaintiffs are unable to state a claim for conversion under Oregon law and defendants' motions are granted.

C.    Fraud Claim

"In Oregon, the prima facie elements of a common-law fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the listener in the manner reasonably contemplated; (6) the listener's ignorance of the representation's falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely thereon;

_____

[6] "During conferral, counsel for plaintiffs agreed that the conversion claim should include an allegation that plaintiffs demanded return of the funds and that First American refused to return them" and, in fact, plaintiffs now contend in their response that "[t]hey have demanded return, but the defendants have refused to return the money taken." American's Mem. in Supp. of Mot. Dismiss 10 n.4; Pls.' Resp. to Mots. Dismiss 6. As discussed above, however, the Court may not consider any "'new' allegations [first introduced] in the [plaintiff's] opposition motion." Schneider, 151 F.3d at 1197 n.1.

and (9) the listener's consequent and proximate injury." Numrich
v. JPMorgan Chase Bank, N.A., 2012 WL 1952654, *6 (D.Or. May 30,
2012) (citing Webb v. Clark, 274 Or. 387, 391, 546 P.2d 1078
(1976)).

Here, the entirety of plaintiffs' fraud claim is as follows:

> Wells Fargo and Koon's statements that Plaintiffs were
> pre-approved for a loan to purchase the property were
> false . . . Plaintiffs were ignorant of the fact that
> Wells Fargo and Koon made a false statement when they
> stated Plaintiffs were pre-approved for a loan to
> purchase the Property. Plaintiffs relied on Wells Fargo
> and Koon's statement when they deposited the money with
> [American] and when they moved into the Property.

FAC ¶¶ 34, 47-50.

Thus, plaintiffs neglect to allege that American made a
misrepresentation or failed to disclose a material fact, or even
possessed a duty to disclose. Id.; see also Gebrayel v. Transam.
Title Ins. Co., 132 Or.App. 271, 279, 888 P.2d 83, rev. denied, 321
Or. 47, 892 P.2d 1024 (1995) ("[a]n escrow holder, by definition,
is a neutral party with no obligation to either party to the
transaction except to carry out the terms of the escrow
instructions [such that] [t]hey owe no duty to advise the parties
on their legal rights and they have no reason to protect the rights
of any one party against another") (citations and internal
quotations omitted); CRM Collateral II, Inc. v. Tri-Cnty. Metro.
Transp. Dist. of Or., 2009 WL 3054959, *5 (D.Or. Sept. 18, 2009)
(outlining the limited circumstances under which a party can be
held liable for the failure to disclose a material fact).

Concerning WFB, plaintiffs do not assert that it knew the
alleged misrepresentation was false or intended plaintiffs to act
thereon. FAC ¶¶ 47-50; see also Briscoe v. Pittman, 268 Or. 604,

607, 522 P.2d 886 (1974), <u>overruled on other grounds</u>, <u>Halford v.</u>
<u>Simpson</u>, 276 Or. 107, 553 P.2d 1055 (1976) ("[i]n an action for
fraud an intent to deceive is a material issue and a necessary
element") (citations omitted).  Given that pre-approval is merely
a preliminary determination that an applicant may qualify for
credit if certain other conditions are met, it is also unclear from
the FAC that WFB's statements were false, much less materially so.
<u>See</u> <u>CRM Collateral</u>, 2009 WL 3054959 at *5 ("[a] misrepresentation
is material where it would be likely to affect the conduct of a
reasonable man with reference to a transaction with another
person") (citations and internal quotations omitted).  In sum,
because plaintiffs do not allege facts indicating that WFB
represented that they were qualified and/or approved for a loan,
their injury - i.e. being in physical possession of a Property that
they could not effectuate the purchase of due to a lack of
financing - does not appear to be consequently and proximately, or
plausibly, caused by defendants' allegedly wrongful conduct.

Finally, regarding both defendants, plaintiffs do not
acknowledge, let alone comply with, Fed. R. Civ. P. 9(b)'s
heightened pleading standards. <u>See generally</u> Pls.' Resp. to Mots.
Dismiss.  As such, despite the fact that defendants raise this
deficiency in their motions, virtually all of plaintiffs' arguments
opposing dismissal of their fraud claim are based on the allegedly
"new" facts first raised in their response. <u>Id.</u> at 1-2, 6; <u>see</u>
<u>also</u> <u>Samper</u>, 2010 WL 3326723 at *16; <u>Day</u>, 191 F.Supp.2d at 159.
Although plaintiffs need not formally plead each of the nine
elements to state a claim, they are nonetheless required to allege
fraud with particularity: "[t]o avoid dismissal for inadequacy

Page 20- OPINION AND ORDER

under Rule 9(b), [the plaintiff's] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation and internal quotations omitted). Therefore, defendants' motions are granted and plaintiffs' fraud claim is dismissed.

VI.  Dismissal With or Without Prejudice

Generally, upon dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and internal quotations omitted). Where a party repeatedly fails to cure deficiencies, however, the court may order dismissal with prejudice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261-63 (9th Cir.), cert. denied, 506 U.S. 915 (1992) (affirming a dismissal with prejudice where the district court instructed the pro se plaintiff regarding deficiencies in prior orders and twice granted leave to amend).

In the case at bar plaintiffs failed to provide a copy of the proposed FAC prior to filing a motion to amend and/or neglected to meaningfully confer. See Stark Decl. ¶¶ 2-5; Sinnott Decl. ¶ 2; see also WFB's Mem. in Supp. of Renewed Mot. Dismiss 2 n.1. Defendants are also correct that WFB's previous motion to dismiss raised several of the same deficiencies delineated in their current motion and, further, this Court found WFB's arguments persuasive and granted dismissal. See WFB's Mem. in Supp. of Mot. Dismiss 5-12.  Nevertheless, because plaintiffs' FAC is devoid of the

Page 21- OPINION AND ORDER

requisite factual support, and the proposed amendments itemized in their response do not cure these defects, it is unclear whether plaintiffs' claims "could not be cured by the allegation of other facts." Lopez, 203 F.3d at 1127. Accordingly, plaintiffs' FAC is dismissed without prejudice. The Court strongly encourages plaintiffs' counsel to conform any future motion to amend and/or proposed pleadings with this opinion.

CONCLUSION

WFB's renewed motion to dismiss (doc. 55) is GRANTED. American's motion to dismiss (doc. 59) is also GRANTED. Accordingly, WFB's request for oral argument is DENIED as unnecessary and plaintiffs' FAC is DISMISSED, without prejudice, as to all claims asserted against WFB and American.

IT IS SO ORDERED

Dated this _____ of November 2013.


_____
Ann Aiken
United States District Judge

Page 22- OPINION AND ORDER