IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICARDO BOJORQUEZ and STEPHANIE BOJORQUEZ,

Plaintiffs,

v.

WELLS FARGO BANK, NA; FIRST AMERICAN TITLE COMPANY OF OREGON; MATT KOON; JEFF HAWS; CATHY HAWS,

Defendants.

Case No. 6:12-cv-02077-AA
OPINION AND ORDER

---

Ricardo Bojorquez
Stephanie Bojorquez
624 Hornet Drive N
Keizer, Oregon 97303
Pro se plaintiffs

Pilar C. French
Anthony M. Stark
Lane Powell, PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204
Attorneys for defendant Wells Fargo Bank, NA

Michael J. Martinis
Martinis & Hill
PO Box 3938
110 Madrona Avenue, SE
Salem, Oregon 97302
Attorney for defendants Matt Koon, Jeff Haws, and Cathy Haws

AIKEN, Chief Judge:

Defendant Wells Fargo Bank, NA ("WFB") moves to dismiss plaintiffs Ricardo and Stephanie Bojorquez's second amended complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6). Defendants Jeff and Cathy Haws also move to dismiss plaintiffs' SAC. For the reasons discussed below, WFB's motion is granted and Mr. and Ms. Haws' motion is denied as moot.

**BACKGROUND**

On June 17, 2012, Mr. Bojorquez, a Hispanic American, and his wife, a member of the military, entered into an agreement ("Contract") with Mr. and Ms. Haws to purchase a residential property in Keizer, Oregon ("Property"), and subsequently moved therein. The Contract listed the Property's price as $199,200, with $7,000 to be paid up front and the balance contingent upon financing. Suppl. Ex. D-1 to Haws' Mot Dismiss 11-12.[1] On June 20, 2012, WFB, via loan officer Matt Koon, pre-approved Mr. Bojorquez for a loan, subject to a detailed review of his credit report, verification of all the information provided within his loan application, and "once all documentation and underwriting

---

[1] Mr. and Ms. Haws submitted several attachments to their motion, labeled "Supplement Ex. D," that were docketed separately and numbered individually. The Court will therefore cite to the attachment number as well as the exhibit. Further, the Court takes judicial notice of Mr. and Ms. Haws' supplemental exhibits to the extent they were publicly filed pursuant to the parties' arbitration proceedings. See Fed. R. Evid. 201(b); Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001); see also Suppl. Ex. D-1 to Haws' Mot. Dismiss 11-20; Suppl. Ex. D-4 to Haws' Mot. Dismiss 7-10; Suppl. Ex. D-5 to Haws' Mot. Dismiss 1-9; Suppl. Ex. E to Haws' Mot. Dismiss 1-6.

requirements and conditions are met and [the bank] receive[s] an acceptable property, [then an] appraisal and title report [must also be obtained]." SAC ¶ 8.

On July 30, 2012, plaintiffs deposited $2,000 with First American Title Company of Oregon ("American") for the purchase of the Property, after which American issued a receipt indicating that the funds were "for closing." Id. at ¶¶ 14-15. On July 31, 2012, American wired $700 to U.S. Bank and $1,300 to HomeStreet Bank, for the benefit of Ms. Haws. Id. at ¶¶ 16, 19. On August 15, 2012, plaintiffs deposited an additional $5,000 with American and again received a receipt reflecting that the funds were "for closing." Id. at ¶¶ 27-28. On August 16, 2012, American wired $5,000 to Todd and Tory Bolatis "at the instruction of Wells Fargo, Koon, Jeff Haws, and Cathy Haws," and for the Haws' benefit. Id. at ¶¶ 29-30.

Thereafter, Mr. Koon informed plaintiffs[2] they were not approved for a loan. Because plaintiffs continued to reside at the Property, Mr. and Ms. Haws "attempted to coerce Plaintiffs into entering into a lease option to purchase the Property with unfavorable terms." Id. at ¶ 37. Plaintiffs rejected this offer. As a result, on September 28, 2012, Mr. and Ms. Haws e-mailed plaintiffs a notice demanding that they vacate the

[2] At some unspecified time, Mr. Bojorquez's loan application was denied by WFB "due to his debt to income ratio." SAC ¶ 21. Plaintiffs then reapplied for a loan in both of their names.

Property.

On November 15, 2012, plaintiffs filed a complaint in this Court alleging: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of Oregon's Unfair Trade Practices Act ("UTPA"); (3) conversion; and (4) fraud. On June 24, 2013, WFB filed a motion to dismiss the complaint. On July 13, 2013, plaintiffs moved for a temporary restraining order to stay arbitration between themselves and Mr. and Ms. Haws; the Honorable Magistrate Judge Coffin denied that motion. Suppl. Ex. D-1 to Haws' Mot. Dismiss 3-8; Suppl. Ex. D-5 to Haws' Mot. Dismiss 1-9. Through arbitration, it was determined that Mr. and Ms. Haws were entitled to a $9,654.53 judgement against plaintiffs, plus attorney fees and costs, representing the amount owed as a result of plaintiffs' occupation of the Property, less the $7,000 in funds previously furnished. Suppl. Ex. E to Haws' Mot. Dismiss 1-6.

On August 14, 2013, with leave from the Court, plaintiffs filed their first amended complaint ("FAC"), reasserting their previous claims, along with new claims under the Equal Credit Opportunity Act ("ECOA") and the Fair Housing Act ("FHA"). On August 28, 2013, WFB filed a renewed motion to dismiss with prejudice. On September 11, 2013, American moved to dismiss the FAC. On November 7, 2013, the Court granted defendants' motions and dismissed plaintiffs' FAC without prejudice. See generally

Bojorquez v. Wells Fargo Bank, NA, 2013 WL 6055258 (D.Or. Nov. 7, 2013).

On January 20, 2014, plaintiffs filed their SAC, alleging ECOA, UTPA, and fraud claims against WFB, as well as a fraud claim against Mr. and Ms. Haws.[3] On February 3, 2014, Mr. and Ms. Haws moved to dismiss the SAC for lack of jurisdiction. On February 6, 2014, WFB moved to dismiss plaintiffs' SAC with prejudice. On February 21, 2014, plaintiffs' counsel moved to withdraw. On March 5, 2014, the Court granted plaintiffs' counsel's motion and provided an additional 20 days, until March 26, 2014, for plaintiffs to either file a response to defendants' motions or advise the Court of new counsel. As of the date of this opinion, plaintiffs have neither filed an opposition nor advised the Court of newly-acquired counsel.

**STANDARD OF REVIEW**

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed.

---

[3] WFB twice moved to dismiss plaintiffs' previous complaints, documenting alleged deficiencies therein. Additionally, the Court wrote a detailed opinion explaining why plaintiffs' FAC failed to state a claim. Yet plaintiffs' SAC is virtually identical to the FAC, with the only relevant differences being that plaintiffs now allege that WFB discouraged Ms. Bojorquez from listing her name on the first loan, repeatedly delayed the loan process, and guaranteed that the loan would be funded. See SAC ¶¶ 9, 11, 22. The Court, however, considered these new allegations in regard to WFB's previous motion to dismiss, as plaintiffs introduced these facts in their opposition to that motion. Bojorquez, 2013 WL 6055258 at *2-4.

R. Civ. P. 12(b)(6). To survive a motion to dismiss, the
complaint must allege "enough facts to state a claim to relief
that is plausible on its face." Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007). For purposes of a motion to dismiss,
the complaint is liberally construed in favor of the plaintiff
and its allegations are taken as true. Rosen v. Walters, 719
F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that
amount to nothing more than a "formulaic recitation of the
elements" of a claim "are conclusory and not entitled to be
assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).
Rather, to state a plausible claim for relief, the complaint
"must contain sufficient allegations of underlying facts" to
support its legal conclusions. Starr v. Baca, 652 F.3d 1202,
1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

Moreover, where fraud is alleged, heightened pleading
standards apply. See Fed. R. Civ. P. 9(b). The plaintiff "must
state the time, place, and specific content of the false
representations as well as the identities of the parties to the
misrepresentations." Schreiber Distrib. v. Serv-Well Furniture
Co., 806 F.2d 1393, 1401 (9th Cir. 1986) (citation and internal
quotations omitted). Likewise, the plaintiff is required to "set
forth what is false or misleading about a statement, and why it
is false." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106
(9th Cir. 2003) (citation and internal quotations omitted).

Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in fraud." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotations omitted).

**DISCUSSION**

WFB asserts that, because plaintiffs failed to overcome the pleading "deficiencies identified by the Court in dismissing [the FAC]," their SAC should be dismissed with prejudice. WFB's Mem. in Supp. of Mot. Dismiss 2-4. Specifically, WFB argues that plaintiffs do not allege facts supporting their three remaining claims. Id. at 7-13. Mr. and Ms. Haws argue that the Court lacks subject matter jurisdiction because the parties are bound by the Contract's mandatory arbitration provision, pursuant to which arbitration proceedings have already commenced. Haws' Mot. Dismiss 2.

I. Equal Credit Opportunity Act Claim

Pursuant to the ECOA, it is wrongful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age," or because "all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a). To state a claim

under the ECOA, the plaintiff is required to allege that he or she: "(1) is a member of a protected class; (2) applied for credit; (3) was qualified for credit; and (4) was denied credit, despite being qualified." Blair v. Bank of Am., N.A., 2012 WL 860411, *13 (D.Or. Mar. 13, 2012) (citation omitted).

The Court finds that plaintiffs' ECOA claim fails at the pleadings level. Plaintiffs neglect to allege any facts demonstrating that they were eligible for but nonetheless denied credit. See SAC ¶¶ 43-48. Rather, they conclude that "Mr. Bojorquez was qualified for the loan that Wells Fargo offered him and that Mr. Koon guaranteed would be funded." Id. at ¶ 46. Plaintiffs' other allegations, however, undermine this assertion. See id. at ¶ 8 ("approval" was "subject to" several conditions precedent); see also id. at ¶ 21 (Mr. Bojorquez was ultimately denied a loan because his debt to income ration was too high). Essentially, plaintiffs were pre-approved for a loan, but pre-approval is not inconsistent with ultimately not qualifying for a loan. Even though the Court specifically identified this pleading deficiency, plaintiffs fail to cure it and instead rely on their previous conclusory allegations. See Bojorquez, 2013 WL 6055258 at *5-6. Therefore, WFB's motion is granted in this regard.

II. State Law Claims

Dismissal of federal claims does not automatically deprive a court of subject matter jurisdiction over any supplemental

claims.  Carlsbad Tech., Inc. v. HIF Bio, Inc., 129 S.Ct. 1862,
1866 (2009).  Where a district court dismisses "all claims over
which it has original jurisdiction," it may, in its discretion,
"decline to exercise supplemental jurisdiction" over any pendent
state law claims.  28 U.S.C. § 1367(c)(3); see also Lacey v.
Maricopa Cnty., 649 F.3d 1118, 1137 (9th Cir. 2011).  Here, in
light of plaintiffs' pro se status, the Court will retain
jurisdiction over their state law claims in order to briefly
address their merits.  See, e.g., Ovitsky v. Oregon, 2013 WL
4505832, *4 (D.Or. Aug. 20, 2013).

A. Unfair Trade Practices Act Claim

The UTPA extends a private cause of action to "any person
who suffers any ascertainable loss of money or property" due to
unlawful trade practices.  Or. Rev. Stat. § 646.638(1).  The
statute lists, as subsections, examples of specific unfair trade
practices.  See Or. Rev. Stat. §§ 646.607, 646.608.  To state a
claim under the UTPA, a plaintiff is required to plead: (1) that
the defendant violated one or more of these subsections; "(2)
causation ('as a result of'); and (3) damage ('ascertainable
loss')."  Moore v. Wells Fargo Bank, NA, 2013 WL 3965313, *5
(D.Or. Aug. 1, 2013) (quoting Feitler v. Animation Celection,
Inc., 170 Or. App. 702, 708 (2000)).

Plaintiffs allege that WFB engaged in unfair trade practices
by misrepresenting that: Ms. Bojorquez was not originally
qualified for a loan, Mr. Bojorquez was approved for a loan, and

the loan was guaranteed. SAC ¶¶ 49-55. The timing of plaintiffs' allegations is problematic; Ms. Bojorquez's initial lack of qualification and Mr. Bojorquez's alleged approval transpired prior to WFB formally processing Mr. Bojorquez's loan application. See SAC ¶¶ 8-9, 21, 23. In other words, causation is lacking because plaintiffs did not rely on Mr. Koon's allegedly false and misleading statements, as they were living on the Property at the time Mr. Bojorquez received pre-approval, which was contingent upon a number of conditions. See SAC ¶¶ 7-10, 21-23.

Plaintiffs' allegation that Mr. Koon, on behalf of WFB, guaranteed a loan after Mr. Bojorquez was indivdiually denied likewise fails to state a claim. As this Court noted in its previous opinion, WFB's "refusal to fund plaintiffs' acquisition of the Property is not contravened by its determination that they were pre-approved for a loan, such that, beyond so concluding, plaintiffs have not provided any basis for this Court to determine that WFB violated the UTPA." Bojorquez, 2013 WL 6055258 at *7 n.5. For these reasons, WFB's motion is granted as to plaintiffs' UTPA claim.

B. Fraud Claims

"In Oregon, the prima facie elements of a common-law fraud claim are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the

representation should be acted upon by the listener in the manner reasonably contemplated; (6) the listener's ignorance of the representation's falsity; (7) the listener's reliance on the truth of the representation; (8) the listener's right to rely thereon; and (9) the listener's consequent and proximate injury." Numrich v. JP Morgan Chase Bank, NA, 2012 WL 1952654, *6 (D.Or. May 30, 2012) (citing Webb v. Clark, 274 Or. 387, 391 (1976)).

Plaintiffs allege that Mr. Koon made false representations concerning the loan, "including but not limited to the fact Ms. Bojorquez was not qualified for the loan; that the plaintiffs were qualified for the loan; and that the loan was guaranteed to be funded." SAC ¶ 57. Plaintiffs further allege that Mr. and Ms. Haws made false representations regarding the need for the $7,000 down payment on the Property.[4] Id. at ¶ 68.

"Given that pre-approval is merely a preliminary determination that an applicant may qualify for credit if certain other conditions are met," it is unclear from plaintiffs' SAC that defendants' statements were false or material. Bojorquez, 2013 WL 6055258 at *9 (citing CRM Collateral II, Inc. v. Tri-Cnty. Metro. Transp. Dist. Of Or., 2009 WL 3054959, *5 (D.Or.

---

[4] The Court notes that several of plaintiffs' allegations relating to Mr. and Ms. Haws contradict their arbitration proceedings. Compare SAC ¶¶ 67-77, with Suppl. Ex. E to Haws' Mot. Dismiss 1-6. Additionally, because plaintiffs contractually agreed to pay $7,000 as a down payment, Mr. and Ms. Haws' alleged misstatements concerning their need for those funds are immaterial.

Sept. 18, 2009)). As discussed above, plaintiffs do not allege facts indicating that they were qualified and approved for a loan. Without such allegations, they cannot establish that their inability to secure financing for the purchase of the Property was caused by defendants' alleged misrepresentations.

Furthermore, plaintiffs once again "do not acknowledge, let alone comply with, Fed. R. Civ. P. 9(b)'s heightened pleading standards." Bojorquez, 2013 WL 6055258 at *9; see also SAC ¶¶ 56-77. Although this Court previously highlighted this shortcoming, plaintiffs nonetheless neglected to plead, with particularity, "the time, place, and specific content of the false representations." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citation and internal quotations omitted). Thus, WFB's motion is granted and plaintiffs' fraud claims are dismissed.

III. Dismissal With or Without Prejudice

Generally, upon dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and internal quotations omitted). Because plaintiffs' SAC fails to plead requisite facts, it is unclear whether their claims "could not possibly be cured by the

allegation of other facts." Id. Further, plaintiffs are now proceeding pro se in this matter. Accordingly, plaintiffs' SAC is dismissed without prejudice; however, failure to conform any future proposed pleadings with this Court's orders will result in dismissal with prejudice.

**CONCLUSION**

WFB's motion to dismiss (doc. 80) is GRANTED. Mr. and Ms. Haws' motion to dismiss (doc. 73) is DENIED as moot. As such, WFB's request for oral argument is DENIED as unnecessary. Any motion to amend the SAC is due within 20 days of the date of this opinion and must be filed in accordance with this Court's orders; failure to do so will result in automatic dismissal of this lawsuit with prejudice.

IT IS SO ORDERED.

Dated this 8th day of ~~April~~ May 2014.

Ann Aiken

Ann Aiken
United States District Judge